JANVIER, Judge.
This is a controversy over the right of certain persons to vote in a special election for officers, a board of trustees and a minister, of a church in the City of New Orleans. The litigation was initiated by the filing in the Civil District Court for the Parish of Orleans of a petition under which the church sought to restrain certain persons from in any manner interfering with the affairs of the church or in any way dissipating its assets and to effect the sequestration by the Civil Sheriff of two bank accounts of the said church corporation.
The regular election had been held' some time before and the suit was brought against certain of those who had been elected, namely, Joseph Henry, Sterling Cincore, Mamie Cincore, Stephnea Had-ley and Helen Clay.
After certain exceptions had been filed by the five named defendants, the matter was called for trial in the District Court, whether for the hearing of the exceptions or on the merits we are unable to determine, and at that time a stipulation was entered into under which it was agreed that an election would be held at a time and place designated and that certain notices would be given to the members. The stipulation which was dated September 22, 1953, also contained the following:
“The voting membership in this election shall consist of all members of this church whd were eligible to vote and were members of the church as of the date August 26, 1953.”
As a result of this stipulation, the District Judge ordered the election held as agreed upon. There then arose a controversy over the question of what persons should be permitted to vote in the election and, on the refusal of the District Judge to recognize the list submitted on behalf of the petitioner, an application was made to the Supreme Court for a writ of certiorari and for a writ of “prohibition” directed to the District Judge ordering him “to render a judgment recognizing the right of all members * * * to take part in the election * * *.” The Supreme Court refused to issue the said writ and the petitioner then filed its list with the District Court and sought by rule nisi to have the Court recognize the persons shown on that list as eligible to vote.
The respondents also filed a list containing the names of 54 persons which number, by agreement, has now been increased to 61, and the respondents asked that the list of names furnished by them be recognized as the correct list of eligible voters.
The District Judge recognized the list filed by the respondents which now contains 61 names and dismissed the rule in which the petitioners sought to have its list of 100 names recognized. From this judgment the petitioner appealed to the Supreme Court, the Supreme Court holding that the amount in dispute did not exceed $2,000 transferred it to this Court. Sixth Baptist Church of New Orleans v. Cincore, 228 La. 769, 84 So. 185.
There are two questions which are before us, one is a question of fact, the other a question of law. The question of fact is whether or not there was adopted at a meeting of the church held on February 11th, 1953, a resolution to the effect that “all persons to be ‘members’ must be paid up, in the event he neglects his dues for three consecutive months he is no longer a member.”
*924 If such a resolution was adopted, the question of law which is presented is, whether or not such a resolution could ha.ve the effect of depriving persons, otherwise qualified but who had not paid dues for three months, of the right to vote.
The contention of petitioner is that such a resolution, even if it was actually adopted, cannot have the effect of depriving members of the church of the right to vote because, if given that effect, it would be violative of a certain provision of the fundamental laws or canons of the church which appear in the Baptist Standard Church Directory and Busy Pastor’s Guide published by the Sunday School Publishing Board National Baptist Convention, U.S.A.
The particular law or canon on which the petitioners rely reads as follows:
“ * * * no member may be lawfully excluded from a Baptist church unless he has had an opportunity to defend himself by appearing before the church for trial in regular manner, in order that he may speak for himself.”
On the first question, whether or not such a resolution was adopted, there was evidence to the effect that the resolution as quoted and as it appears in the minutes of the meeting was actually adopted. On the other hand, there is evidence to the effect that no such action was taken at that or at any other meeting, and, in support of the contention that no such resolution was adopted, counsel for petitioners points out that the language of the resolution as it appears in the minutes is slightly different from that which is testified to by the person who says that she offered the resolution.
The District Judge, in referring to the question of whether or not the resolution was adopted, said:
“The Minute Book shows that a resolution or resolutions were adopted providing for payment of dues by members. Without these dues, the church cannot exist.”
The Judge also said:
“There is no attack on these minutes not being the official minutes of the church. That is the only thing I can go by, is the official minutes of any corporation.”
While there is considerable evidence to the contrary, the record does not justify the conclusion that the District Judge was in manifest error in holding that the resolution was actually adopted.
On the question of whether the church could, by such a resolution, deprive anyone, otherwise qualified, of the right to vote, the District Judge, referring to the church, said:
“ * * * they have a right for their own government and for their own existence to adopt resolutions and minutes that would help them in the management of the affairs of this corporation.”
In making this statement it appears to us that the Judge laid down a sound rule to the effect that each church which desires to do so may adopt reasonable rules and regulations for the financing of the church by the payment of dues or in any other manner, provided these regulations do not conflict with the charter under which any such church is organized. And we have no doubt that, to some extent, the District Judge was influenced by the testimony of two ministers of the same faith who, though produced as witnesses on behalf of the petitioners, both said that in the matter of finances each church could make its own rules and regulations.
The Reverend Paul Walker Raphael said:
“ * * * Each local church or association makes rules as to how it will take care of its finances and that is the system.”
*925 And when asked whether that was done in this particular church, this member said: “That is right.”
The Reverend William P. Anderson was asked:
“Now, has any Baptist Church any right, lawfully under the church law, to make it a condition precedent to belonging to that church that dues be paid, any particular dues?”
and he answered:
“It is customary among most churches that they make laws, each individual church.”
And when counsel for petitioners attempted to persuade this member to testify differently, the District Judge said:
“I am going to interpose an objection myself * * * on the ground that this man has already testified that each individual church has a right to make its own rules according to the church law, * * *.”
It is evident that, in every church organization, it is essential that there be a business management of its financial affairs as well as a spiritual management of its religious matters. The management of its spiritual matters must, of course, be in accordance with the canons or laws of the parent or general organization, but the management of its business affairs, we think, under the charter of this church and, according to the testimony, under the charter of all such churches, is left to the church itself under such rules and regulations as it may make. This would mean that no member could be excluded from taking part in the religious rites, such as communion, etc., except after a trial, but any member may be denied the right to vote or to take part in the business affairs of the church organization except upon compliance with the properly adopted rules and regulations.
Throughout the record various witnesses used the very expressive and meaningful words “financial” and “unfinancial”, and it appears that to be “financial” a member must have met his monetary obligations to the church. A member who is “unfinancial” is one who is in arrears. If there were no dues or other similiar financial obligations, there would have been no reason for the various witnesses to discuss the question of which members were “financial” and which “infinancial.”
It is our conclusion therefore that, having found that the resolution was properly adopted, it necessarily follows that no persons might be permitted to vote at an election unless qualified in accordance with that resolution. And we therefore conclude that the District Judge was correct in ruling that the persons shown on the list furnished by the respondents and identified as “R-3” were the persons who were qualified to vote had the election been held at the specified time. However, counsel for the respondents, in oral argument, stated that there was no objection to permitting any person who has since qualified to take part in the election. We think that the proper solution of the matter is to remand it to the District Judge in order that a new date may be set for the special election and another date may be set on which it may be determined just what persons at that time have qualified as members of the church by the payment of dues in accordance with the referred to resolution.
Accordingly, the matter is remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and consistent with the views herein expressed, all costs to await the ' final determination of this controversy.
Affirmed and remanded.